```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                           NORTHERN DIVISION
                             AT COVINGTON
```

**CIVIL ACTION NO. 2011-85 (WOB-CJS)**

**KATHY LEWIS**                                                              **PLAINTIFF**

VS.                         <u>MEMORANDUM OPINION</u>
                                  <u>AND ORDER</u>

**STATE FARM MUTUAL AUTOMOBILE**                                             **DEFENDANT**
**INSURANCE COMPANY**

In this matter, Plaintiff alleges that her insurance company acted in bad faith in its handling of her claims. The Court heard oral argument on Defendant's Motion for Summary Judgment (Doc. 18) on June 20, 2012. James B. Galbreath represented Plaintiff, who was personally present, and Richard W. Edwards represented Defendant. Official court reporter Joan Averdick recorded the proceedings.

*Factual and Procedural Background*

On May 31, 2008, Plaintiff was injured in a motor vehicle accident when Anne Drury rear-ended Plaintiff's vehicle.[1] (Plaintiff Depo. at 21-23). As a result of the accident, Plaintiff was initially diagnosed with cervical strain. (*Id*. at 26).

---

[1] Drury was originally named as a defendant in this action, but all claims against her were settled, and she was dismissed by agreement of the parties on July 21, 2011. (*See* Docs. 12, 14).

Four to six weeks after the accident, Plaintiff began to experience numbness and tingling in her arms. (*Id*.). Further testing and consultations revealed that she was suffering from thoracic outlet syndrome and, in December 2010, she underwent surgery for this condition. (Plaintiff Depo. at 30-32, 39).

**A.   Available Coverage**

At the time of the accident, Drury was insured by Progressive Insurance Company for $50,000 in liability limits. Plaintiff was insured by Defendant, and her policy provided $25,000 in Medical Payment Coverage ("MPC") and $100,000 in Underinsured Motorist ("UIM") benefits.

Furthermore, because the accident occurred in Kentucky, Plaintiff was entitled to $10,000 in personal injury protection ("PIP") benefits under Kentucky's Motor Vehicle Reparations Act ("MVRA").

**B.   PIP and MPC Benefits**

Shortly after the accident, Plaintiff began submitting her bills directly to Defendant. (*Id*. at 95). These initial medical bills were handled under the PIP benefits. When those benefits were exhausted, further claims were paid under the MPC.

The record reflects some delays in the payment of benefits. The parties do not dispute there were coding issues regarding Plaintiff's change in diagnosis and with some of the bills

submitted, specifically, those submitted by her massage therapist. (*Id*. at 108, 179-80). Additionally, the parties agree that Defendant conducted an investigation into the propriety of Plaintiff's treatment. (*Id*. at 101); (Doc. 18-4, Letter Requesting Doctor's Report, at 1). However, the details of these coding issues and the investigation, and their relation to the payment delays, are unclear.

It is undisputed that Defendant has paid all available PIP benefits and has exhausted the MPC coverage.[2]

**C.  UIM Benefits**

Plaintiff's insurance policy also provided $100,000 in UIM coverage. She admits that she never specifically discussed with her agent how UIM coverage worked. (Plaintiff Depo. at 70).

On February 3, 2011, Plaintiff demanded the policy limits of her UIM benefits. (Doc. 18-7, at 2). At that time, Plaintiff had not resolved her claims against Drury. (*See* Doc. 18-8). Thus, Defendant notified Plaintiff that it could not process her claim for UIM benefits until receiving notice of the settlement with Progressive. (*See id*.).

Thereafter, Plaintiff sent Defendant a copy of the Complaint along with a letter addressed to Progressive accepting its tender of Drury's policy limits of $50,000. (Doc. 18-10, at

---

[2] On June 24, 2011, Defendant exhausted MPC coverage by tendering the amount of remaining benefits directly to Plaintiff. (Doc. 18-5, at 1).

3

1).  This constituted Defendant's first notice of Plaintiff's settlement with Progressive.  Defendant notified Plaintiff that it would waive its subrogation rights, (*see* doc. 18-13, at 1), and within one month of the filing of the Complaint, Progressive tendered its policy limits.   (Doc. 18-11, at 1).

On June 3, 2011, Defendant offered to pay the remaining benefits available under Plaintiff's policies.  (Doc. 18-12, at 1).  This offer represented payment of the UIM policy limits of $100,000, reduced by the $50,000 tendered by Progressive, and the remaining amount of MPC benefits.  (*See id.*).

Plaintiff's Complaint asserts that Defendant acted in bad faith and in violation of the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA") by failing to settle Plaintiff's claim for UIM coverage, as well as setting off the amount she recovered from Progressive.  She seeks a declaration that she is entitled to the full $100,000 under her UIM policy.

Plaintiff also alleges that Defendant failed to reasonably or timely investigate her claims and delayed payment of her benefits in bad faith and in violation of the KUCSPA.

### *Analysis*

**A.   Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part that: "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists, and the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Ultimately, the court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

**B.  Plaintiff's Claims Regarding her UIM Benefits**

As a preliminary matter, the Court concludes that Ohio law applies to determine the rights and obligations of the parties.

A court sitting in diversity applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Kentucky law, the law of the state with the most significant relationship to the transaction and the parties applies to resolve the dispute. *See Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581-82 (Ky. 1977). "Using this test, in most cases the law of the residence

of the named insured will determine the scope of his automobile liability insurance policy." *Id*. at 582.

In this case, Plaintiff resides in Ohio, and the insurance policy was issued in Ohio. The performance of the contract occurred in Ohio, as Plaintiff's claims for reimbursement and the subsequent payments transpired in Ohio. In fact, the only contact with Kentucky is that the accident occurred there. Therefore, Ohio law governs the parties' conduct under the contract.

Plaintiff seeks a declaration that she is owed $50,000 in UIM benefits, which constitutes the amount by which Defendant reduced her payment because of Progressive's settlement. She also contends that Defendant's failure to pay this amount constituted bad faith.

Plaintiff's argument is not well-taken because Defendant's set off was proper under both the terms of the Policy and under Ohio law. The Policy unambiguously provides that the insured's UIM coverage will be reduced by the amount available for payment from other liability insurance policies.[3]

---

[3] The relevant policy language provides:

> 4. The most we pay for all damages arising out of and due to **bodily injury** to one **person** is the lesser of:
>    a. the difference between the "each person" limit of liability of this coverage and the total amount available for payment from all liability bonds, liability insurance policies, self-insurance covering **persons** or organizations liable for the **bodily**

6

Additionally, the Ohio Revised Code provides in relevant part:

> Underinsured motorist coverage in this state is not and shall not be excess coverage to other applicable liability coverages, and shall only provide the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable to the insured were uninsured at the time of the accident. ***The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.***

O.R.C. § 3937.18(C) (emphasis added).

Plaintiff had UIM coverage in the amount of $100,000. She settled with Progressive and received $50,000. Therefore, Defendant paid her $50,000, the difference between these two amounts. This reduction was in compliance with both the plain language of the Policy and Ohio law and, therefore, was proper.[4] *See id.*; *Littrell v. Wigglesworth*, 746 N.E.2d 1077, 1084 (Ohio 2001) (concluding that payments made by the tortfeasor to the

---

> *injury*, and all payments individually made by *persons* or organizations liable for the ***bodily injury***; . . .

(*See* Doc. 25-1, at 2)(emphasis in original).

[4] To the extent that Plaintiff contends that Defendant acted in bad faith because her agent failed to adequately explain the set-off provision and thus misrepresented that she had $100,000 of UIM coverage when, in fact, she did not, this argument fails.
  Ohio law specifically explains that UIM insurance is not excess insurance, but rather provides that a UIM policy shall be the difference between "those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured" and the UIM policy limits. *See id*. Therefore, Plaintiff received $100,000 worth of UIM coverage as it is defined under Ohio law, and no misrepresentation occurred.

plaintiff offset the amount of UIM coverage available under the policy).

To the extent that Plaintiff argues that Ohio law, which requires set off, should not be applied because it violates Kentucky public policy, this argument fails.  Plaintiff relies on Kentucky's public policy in favor of stacking UIM policies. *See Allstate Ins. Co. v. Dicke*, 862 S.W.2d 327, 329 (Ky. 1993) (concluding that anti-stacking provisions contained within insurance policies were void as against public policy when "separate items of 'personal' insurance [were] bought").

However, stacking is not at issue in this case.  Stacking occurs when an insured seeks to recover benefits under two different insurance policies.  *See Hammer v. State Farm Mut. Auto. Ins. Co*., 950 F. Supp. 192, 194 (W.D. Ky. 1996).  Here, Plaintiff is attempting to recover UIM benefits under a single policy and, therefore, her reliance is misplaced.

Moreover, application of Ohio law does not "violate any public policy of Kentucky because such would not deny benefits to a Kentucky resident who would otherwise be entitled to them under our law; and Kentucky has no interest in applying our public policy to provide benefits to [Ohio] residents who would not be entitled to them under [Ohio] law." *State Farm Mut. Auto Ins. Co. v. Marley*, 151 S.W.3d 33, 42 (Ky. 2004) (Cooper, J.,

dissenting).  *See also Hammer*, 950 F. Supp. at 195 (applying Indiana law to enforce an anti-stacking provision within an insurance policy, even though such provisions are void against public policy in Kentucky).

Because Defendant properly paid Plaintiff $50,000 in compliance with both the terms of the Policy and Ohio law, Defendant did not act in bad faith.  Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claims premised on payment of her UIM benefits.[5]

**C.   Plaintiff's Claim Regarding PIP Benefits**

Plaintiff originally asserted a bad faith claim premised on Defendant's administration of the PIP benefits.  However, she clarified during oral argument that she is not pursuing this claim.  Accordingly, to the extent that Plaintiff's bad faith claim was based on Defendant's payment of PIP benefits,[6] Defendant's motion is granted.

---

[5] Plaintiff originally argued that Defendant, in bad faith, delayed payment of her UIM benefits.  However, during oral argument, Plaintiff clarified that she is not premising her bad faith claim on any delay in payment of UIM benefits.

[6] In her Complaint, Plaintiff sought to recover "any and all relief available to her under the Kentucky Motor Vehicle Reparations Act, including, but not limited to exemplary and punitive damages . . . ."  The MVRA is the exclusive remedy for an insurance company's improper delay or denial of no-fault benefits, *see Foster v. Ky. Farm Bureau Mut. Ins.*, 189 S.W.3d 553, 557 (Ky. 2006), and any recovery for untimely payments is limited to attorney fees and statutory interest.  KRS 304.39-210(1)-(2); KRS 304.39-220(1).  Therefore, Plaintiff would not be entitled to exemplary and punitive damages under the MVRA.  Furthermore, because Plaintiff is not pursuing any claims based on Defendant's administration of PIP benefits, the Court will not determine whether any additional relief would be available.

**D.   Claim of Bad Faith for Alleged Delay in Payment of MPC Benefits**

Plaintiff contends that Defendant acted in bad faith by delaying and denying payment and settlement of her MPC claims. Defendant argues that once it completed its investigation regarding the necessity of massage therapy, it timely paid any pending claims.

Review of the record reveals that additional information is needed to determine whether any delay in paying Plaintiff's MPC benefits was in bad faith. This requires a detailed analysis of each medical bill and reimbursement, and this issue will be referred to the assigned Magistrate Judge for her Report and Recommendation as to whether summary judgment on this issue is appropriate.

*Conclusion*

Therefore, having reviewed this matter, and the Court being otherwise advised, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. 18) be, and is hereby, **granted in part**;

(2) This matter is hereby **referred to** Magistrate Judge Candace J. Smith for her Report and Recommendation as to whether Defendant acted in bad faith regarding payment of Plaintiff's MPC benefits; and

(3) The parties shall supplement the record with any evidence necessary for resolution of the issue.

This 26th day of June, 2012.



Signed By:
William O. Bertelsman
United States District Judge

TIC: 30 min.